FILED
2025 Nov-30 PM 12:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JACKIE L. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:24-cv-1324-HDM** |
| | ) | |
| **REGIONS BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

H. Gregory Harp (ASB-0904-T74H)
GREGORY HARP LLC
810 Watterson Curve
Trussville, Alabama 35173
205-291-0088
gh@gregoryharplaw.com

Counsel for Plaintiff Jackie L. Miller

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................II

TABLE OF AUTHORITIES ........................................................................ IV

I. INTRODUCTION ........................................................................1

II. SUMMARY JUDGMENT STANDARD ..........................................2

III. PLAINTIFF'S STATEMENT OF DISPUTED FACTS ......................3

1. The "Essential" Nature of Monitoring and/or Testing ....................4

2. The adequacy of Regions' interactive process. ..............................5

3. Regions' timeline and characterization of alleged performance issues. ........................................................................5

4. Performance expectations were selectively enforced after Plaintiff Miller's ADHD disclosure. ........................................................6

III. ARGUMENT ........................................................................14

A. Plaintiff Miller's ADAAA Failure-to-Accommodate Claim Presents Genuine Issues of Material Fact. ..........................................15

1. Whether monitoring and/or testing duties were essential job functions is disputed. ........................................................17

2. A reasonable trier of fact could find that Regions failed to engage in a good-faith interactive process. ......................................18

3. Plaintiff did not receive the accommodations Regions claims to have provided. ........................................................................21

4. Plaintiff Miller was denied reasonable accommodations by Regions. ........................................................................22

B. Plaintiff Miller's ADAAA Retaliation Claim Should Be Submitted to a Trier of Fact........23

1. Protected activity and adverse action are not seriously disputed. ........23

2. Temporal proximity and pattern of discipline support causation........24

3. Regions' shifting explanations raise a trier of fact question on pretext........24

C. Plaintiff Miller's FMLA Retaliation Claim Contains Multiple Fact Disputes........25

D. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's FMLA Retaliation Claim ........27

1. Multiple Regions' actions qualify as adverse actions under the FMLA........27

2. Plaintiff easily establishes causation: Regions ignores Eleventh Circuit precedent and relies on cases that are either distinguishable or superseded. ........28

IV. CONCLUSION ........31

## TABLE OF AUTHORITIES

### CASES

*Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306 (11th Cir. 2007). ..3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................2

*Batson v. Salvation Army,* 897 F.3d 1320, 1329 (11th Cir. 2018) ................27

*Breen v. Dep't of Transp.*, 282 F.3d 839, 842 (D.C. Cir. 2002) ...................20

*Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999)...........2*

*Combs v. Plantation Patterns,* 106 F.3d 1519, 1527 (11th Cir. 1997) .........30

*Evans v. Stephens,* 407 F.3d 1272, 1278 (11th Cir.2005) ...............................3

*FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282 (11th Cir. 2011).........3

*Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1282 (11th Cir. 1999).2

*Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247 (11th Cir. 2007) ..........17, 20

*Jones v. Aaron's Inc.*, 748 F. App'x 907 (11th Cir. 2018)..........26, 27, 28, 29

*Jones v. Gulf Coast Health Care of Del., LLC,* 854 F.3d 1261 (11th Cir. 2017) ..........................................................................................25, 28

*Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264 (11th Cir. 2014)...16, 17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ....................14, 25

Pa*tterson v. Ga. Pac.*, LLC, 38 F.4th 1336 (11th Cir. 2022)..........................3

Pr*ice v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005) .......................................3

*Schaaf v. SmithKline Beecham Corp.*, 602 F.3d 1236 (11th Cir. 2010) .......28

*Simpson v. Ala. Dept of Hum. Res.*, 311 F. App'x 264 (11th Cir. 2009) 16

*Sutton v. Lader*, 185 F.3d 1203 (11th Cir. 1999) ....................................... 16

**RULES**

Fed. R. Civ. P. 56(a) ........................................................................... 2

**REGULATIONS**

29 C.F.R. § 1630.2(h)(2) ....................................................................... 16

29 C.F.R. § 1630.2(j)(1)(ii) ..................................................................... 16

42 U.S.C. § 12102(4)(E)(i) ..................................................................... 17

## I. INTRODUCTION

Plaintiff Jackie L. Miller ("Plaintiff Miller") respectfully submits this Response Memorandum in Opposition to Regions Bank's Motion for Summary Judgment. Plaintiff Miller incorporates by reference all exhibits contemporaneously filed with this Response. Plaintiff Miller is disabled under the definition of disability contained in the Americans with Disabilities Act as Amended 2008 ("ADAAA")

Plaintiff Miller brings claims against defendant Regions Bank ("Regions") alleging violations by Regions of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). (Doc. 1). Plaintiff Miller allegations were denied by Regions and after the close of discovery, Regions filed its motion for summary judgment. (Doc. 19). Regions contemporaneously filed a Memorandum of Law in support of its motion for summary judgment. (Doc. 21). Regions' memorandum relies on clearly disputed factual assertions, arguments that require credibility determinations, and improper inferences. All disputed facts and credibility determinations must be resolved by the trier of fact. For those reasons, summary judgment at this stage is improper.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party, and a fact is "material" if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). The Court may not weigh conflicting evidence or make credibility determinations; such functions are reserved for the trier of fact. *Anderson*, 477 U.S. at 255; *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

Once the moving party meets its initial burden, the non-movant need only present evidence "such that a reasonable trier of fact could return a verdict" in her favor. *Anderson*, 477 U.S. at 248. Importantly, "if a reasonable factfinder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then

the court **should not grant summary judgment**." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (emphasis added).

Because the summary judgment standard "does not allow a court to weigh conflicting evidence or make credibility determinations," *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011), summary judgment must be denied when, as here, the record contains competing testimony, disputed facts, and multiple reasonable inferences in favor of the plaintiff. *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir.2005) (en banc) ("[W]hen conflicts arise between the facts evidenced by the parties, we [must] credit the nonmoving party's version.").

This is true when the Plaintiff Miller's evidence consists of nothing more than a sworn declaration. *See Patterson v. Ga. Pac.*, LLC, 38 F.4th 1336 (11th Cir. 2022), 1352 ("And that is true even if, as is often the case, the plaintiff's evidence consists primarily or solely of her own self-serving sworn statements or testimony."); and *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").

## III. PLAINTIFF'S STATEMENT OF DISPUTED FACTS

For summary judgment purposes, the record—viewed in the light most favorable to Plaintiff—would require a reasonable trier of fact to weigh the evidence to determine the following:

**1. The "Essential" Nature of Monitoring and/or Testing**

Plaintiff Miller contends that monitoring and/or testing was not an essential function of her job. Indeed, Plaintiff Miller contends that as a Compliance Administrator, monitoring and/or testing was not part of her job duties at all. Regions contends that certain testing and/or monitoring tasks were "essential" job functions. Plaintiff Miller disputes this characterization and presents testimony and documentation that these duties were a small portion of her role, were frequently shared among team members, and could and were reassigned without undue hardship to Regions.

To that point, Plaintiff Miller "inherited" the monitoring and/or testing duties through reassignment. Moreover, Plaintiff Miller contends that the testing and/or monitoring was never a part of her official job duties and were tasks that were given to her during a period of transition at Regions and never removed from her workload.

The full evidentiary record requires that the trier of fact determine whether those testing and/or tasks were truly "essential" functions of Plaintiff Miller's job description within the meaning of the ADA.

**2. The adequacy of Regions' interactive process.**

After Plaintiff disclosed her ADHD diagnosis and requested accommodations, Regions was obligated to engage in a good-faith interactive process to provide reasonable accommodations to Plaintiff Miller. Plaintiff Miller contends that Regions' response to Plaintiff Miller's disclosure to Regions of her disability was perfunctory and one-sided.

Plaintiff Miller contends that when viewed in a light most favorable to her as the non-movant, the evidence shows that Regions rejected reasonable alternatives, unilaterally ended the process rather than exploring available options. In fact, Regions' own internal electronic mail correspondence, when viewed in a light most favorable to Plaintiff Miller shows that Plaintiff Miller's department leads were much more concerned with was to terminate Plaintiff Miller's employment rather than providing her reasonable accommodations.

**3. Regions' timeline and characterization of alleged performance issues.**

Regions portrays a long history of performance problems predating Plaintiff Miller's ADAAA disclosure and FMLA leave. Plaintiff disputes both the timing and the severity of these alleged issues and instead, as shown, evidence of prior positive performance, satisfactory reviews, and the absence of formal discipline show that Regions did not begin taking punitive actions

against Plaintiff Miller until after she disclosed to Regions her disability and requested FMLA leave. Further, Regions asserts that all disciplinary actions were unrelated to Plaintiff Miller's accommodation request and FMLA leave. Plaintiff Miller disputes this, pointing to the close temporal proximity between her protected activity and the disciplinary actions, the lack of prior formal discipline, and inconsistent, self-serving explanations for the adverse actions.

**4. Performance expectations were selectively enforced after Plaintiff Miller's ADHD disclosure.**

Performance expectations of Plaintiff Miller that were unaddressed, tolerated or informally addressed before Plaintiff Miller's disclosure of her disability and request for FMLA leave suddenly became the basis for written warnings and escalated discipline after the protected action. A reasonable trier of fact could find that the standards were selectively enforced.

In attempting to make its prima facie case, Regions offers multiple, shifting explanations for Plaintiff Miller's termination, including alleged performance deficiencies that it would have the trier of fact believe were offenses subject to immediate termination, yet tolerated for year by Regions. Plaintiff Miller disputes Regions' proffered reasons for her ultimate termination as factually inaccurate, wildly exaggerated, and applied in a disparate manner. Under Eleventh Circuit law, such inconsistencies raise classic questions of fact regarding the issue of pretext.

In addition to the general questions of fact raised in this response, Plaintiff Miller addresses certain supposed narrative facts put forth in Regions' brief:

**2. "In October of 2018, Plaintiff moved into a Business Unit Compliance Administrator Role."**

Plaintiff Miller disputes this narrative fact thusly: In October 2018, Tracy Harlow, Plaintiff Miller's manager at the time, contacted Regions' Human Resources Department ("HR") regarding the staff she needed for her Team. The discovery was made that Plaintiff Miller was incorrectly onboarded as a Compliance Analyst rather than as a Compliance Administrator. As a result of this discovery, Plaintiff Miller went before two-person compensation committee to explain her job duties. After appearing before the compensation committee, it was determined that Plaintiff Miller should have onboarded to Regions as an Administrator (Doc. 24 – Declaration of Jackie L. Miller).

**3. "In this role, Plaintiff was responsible for knowing rules and regulations, overseeing the creation and delivery of training to assigned areas, performing administrative duties, and advising on compliance issues; her duties included generating regular reports relating to her <u>supervisory testing and monitoring functions</u>." (Doc. 21, p. 9, ¶3)** (emphasis added)**.**

Plaintiff Miller disputes this narrative thusly: Plaintiff Miller points out that Regions admits that Plaintiff Miller held a supervisory role over

monitoring and/or testing, and not a functional role to test and monitor. (*Id.*). Further, in February 2019 Regions hired outside consultants to reorganize Regions. The reorganization was given the moniker "Simplify and Grow". In April 2019 Regions announced that its Private Wealth Banking and Trust department (Plaintiff Miller's department), Corporate Trust department, and Intuitional Trust and RIM (Regions Investment Management) departments would merge together to become one first line compliance department named Wealth Management Risk Control ("WMRC") with Collins Compere appointed as head of WMRC. (Doc. 24 ¶¶12-13) Plaintiff Miller's job title did not change. Plaintiff Miller began reporting to Ashley Morris ("Morris") who placed Plaintiff Miller placed on a team with Dave Hewett. The team was nameed "Wealth Management Risk Control Regulatory and Oversight". (*Id.* at Doc. 24)

Morris subsequently turned in her notice and due to Plaintiff Miller and Hewett not having a Manager, Compere inform Plaintiff Miller that she should begin reporting to Clayton Chastain ("Chastain") in the interim who at the time was assigned as the Business Unit Functional Manager over surveillance and had a separate team of analysts not including Plaintiff Miller to perform monitoring and/or testing activities. (Doc. 24, ¶15)

After she began reporting to Chastain, Plaintiff Miller remained in her previous role and continued her assigned job duties. At that time, none of the assigned job duties included monitoring and/or testing. (Doc. 24, ¶16) Chastain later had a SharePoint site created for his monitoring and/or testing employees to utilize when completing their work so that he could run reports from the SharePoint site to use for the quarterly Executive Leadership Committee (ELC). (Doc. 24, ¶21) Initially, Plaintiff Miller's completed work was not entered in this SharePoint Site. Later, Chastain began having Plaintiff Miller place her Regulatory and Oversight work into the SharePoint site and rename that work "monitoring and/or testing". (Doc. 24, ¶22. Chastain explained to Plaintiff Miller that this ELC meetings and provide updates about his team's work. With the addition of Plaintiff Miller's work into the SharePoint site, Chastain's team's numbers related to monitoring and/or testing were inflated. (*Id.*)

Eventually, in small increments, Plaintiff Miller was given what could be considered monitoring and/or testing. This was usually centered around there a problem that Plaintiff Miller would have to figure it out and fix; whether it was new regulations that would change how the monitoring and/or testing was done or a remediation plan to correct something internal audit found. After Miller would fix the problem, it would not be transferred to a

monitoring and/or testing analyst as it was supposed to occur, but instead Chastain left the project with Plaintiff Miller to add to her Regulatory and Oversight responsibilities. (Doc. 24, ¶22)

In an email exchange with Denise Morrison ("Morrison") Morrison informed Plaintiff Miller that Plaintiff Miller would be transitioning those monitoring and/or testing duties placed on her by Chastain once Amanda McMinn ("McMinn") was onboarded. (Doc. 24, ¶25) Morrison and McMinn sent an email to Chastain informing him that the monitoring and/or testing activities should be transitioned before Plaintiff Miller took on any further work. (Doc. 24, ¶26)

**10. "On March 25, 2022, Plaintiff submitted feedback on McMinn on a Workday survey."**

Plaintiff Miller disputes this narrative fact. Plaintiff Miller submitted the survey shortly after her annual review was completed in February. Plaintiff Miller requested to meet with McMinn sometime after that in March to discuss a couple of occurrences that happened between McMinn and Plaintiff Miller so that they could be on the same page. The meeting occurred was March 25, 2022. At the meeting McMinn asked Plaintiff Miller if she had given thought about what she wanted to do to move forward in her job, since Regions did not have advancement such as Administrator I, II or III. Importantly, at the March 25, 2022 meeting, McMinn informed Plaintiff

Miller that monitoring and/or testing was no longer needed, explain that monitoring and/or testing was no longer needed since the Surveillance program had been revamped and Regions had a contractor help them build out new reporting. At that meeting McMinn also informed Plaintiff Miller that McMinn was not concerned with Morrison's expectations of Plaintiff Miller and that Plaintiff Miller needed to be concerned about McMinn's expectations for Plaintiff Miller

**11. Plaintiff continued to struggle in her performance despite counseling by McMinn, including missing deadlines, not completing tasks, and communicating poorly with her team. Plaintiff also failed to timely complete her regular testing and monitoring functions, which were regular functions of her position as a member of the surveillance team. Plaintiff also failed to ensure her desk procedures were up to date and saved correctly so that others could access them. (Doc. 21, pp. 10-11) (citations omitted).**

Plaintiff Miller disputes these statements. This is complete fabrication as the only counseling Plaintiff Miller supposedly received was on April 6, 2022 (the PIP discussion). As far as Plaintiff Miller's regular duties, Plaintiff Miller completed all tasks by deadlines imposed. Nevertheless, McMinn considered work not "completed by the deadline" if it was not completed before the deadline imposed. (Doc. 24, ¶36).

**13. On April 6, 2022, McMinn placed Plaintiff on a performance improvement plan (PIP), which warned Plaintiff that "Failure to meet expectations outlined in this plan as well as failure to maintain all other standards of performance associated with your role could result in disciplinary action." (Doc. 21, p. 11).**

Plaintiff Miller disputes this narrative. McMinn requested an April 6, 2022 meeting with Plaintiff Miller. When McMinn and Plaintiff Miller got on the Teams call, McMinn explained the Miller that she was forwarding her an email and to not get upset that it was not what it appeared to be. Plaintiff Miller received the email while she was on the call with McMinn opened it to read "Performance Improvement Plan" ("PIP"). McMinn immediately informed Plaintiff Miller again is not what it appears to be and asked her to go through the email with her. McMinn misrepresented the true purpose of the document claiming it was to a PIP but rather "[t]his is only to cement my expectations". Plaintiff Miller agreed to go through it with her before reading all of it."

McMinn and Plaintiff Miller agreed that Plaintiff Miller would work creating a space (like the monitoring and/or testing site) to show Ad Hoc items and Projects Plaintiff Miller was working on so that she could view what Plaintiff Miller was doing and where Plaintiff Miller was on certain items of responsibility. Plaintiff Miller created a template and forwarded to McMinn who responded she would get with Lynn Higginbotham to set up in our SharePoint site however McMinn never did. Plaintiff Miller was informed before she left for FMLA that McMinn never got with Higginbotham about the SharePoint site. Before Plaintiff Miller left on FMLA, Plaintiff Miller

checked with McMinn, and she responded with an email that she had not done it, and it was not important now that Plaintiff Miller was going on FMLA and we would discuss when Plaintiff Miller returned. (Doc. 24-5 – Recording of April 6, 2022, Meeting between Plaintiff Miller and McMinn).

**15. During the April 6 meeting, which Plaintiff surreptitiously recorded, Plaintiff told McMinn that a log or spreadsheet would be helpful to her in prioritizing projects. McMinn also made it clear that there will always be some level of testing and monitoring duties with Plaintiff's administrator job. Doc. 20-1 at 59, 233:10-23; Doc. 20-1 at 175 and 185.**

Plaintiff Miller disputes this narrative. When juxtaposed against the actual recording, a question of fact is presented regarding Plaintiff Miller's contention that McMinn understood that the oversight duties that Plaintiff Miller performed that were not monitoring or testing and what Plaintiff Miller brought over to the Surveillance Team when the transition occurred. (*Id.*)

**18. Between the date of the PIP and May 17, 2022, Plaintiff failed to complete numerous tasks addressed in the PIP. Doc. 20-5, ¶¶17-19.**

Plaintiff Miller disputes this narrative. Plaintiff Miller completed everything in the so-called PIP, there was no deadlines specified in the so-called PIP (Doc. 24, ¶36).

**21. On June 29, 2022, Elbony Cole, an Accommodation and Leave Analyst for Regions, informed Plaintiff that it would not be possible to remove all testing and monitoring activities, as these were essential functions of her role. Cole offered to provide the following alternative accommodation on behalf of Regions: "Weekly 1:1s with her manager (to level set expectations, ask questions, etc.), date range communication for**

**deadlines, referral to Degreed resources (e.g., Prioritization and Time Management courses), and/or referral to the FMLA process". Cole asked Plaintiff to identify which of the offered accommodations she wished to have implemented by July 1st, 2022. (Doc. 21, p. 13).**

Plaintiff Miller disputes this narrative. Cole did tell Plaintiff Miller that McMinn told her these were essential functions of my role. This was not true. (Doc. 24, ¶56) The "alternative accommodations" offered by Cole to Plaintiff Miller were in fact not alternative accommodations at all. (Doc. 24, ¶45) These disputes go to the heart of whether Regions violated the ADAAA and FMLA and clearly preclude summary judgment.

## III. ARGUMENT

To establish a prima facie failure-to-accommodate claim, Plaintiff Miller need only show: (1) she is a qualified individual with a disability; (2) she requested a reasonable accommodation; and (3) the employer failed to provide a reasonable accommodation. *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). The burden then shifts back to Regions to rebut the rebut Plaintiff Miller's inference of discrimination by showing that Regions has a legitimate, non-discriminatory reason for Plaintiff Miller's termination. Only then does the burden shift back to Plaintiff Miller to show that Regions' proffered reason for Plaintiff Miller's termination was nothing more than a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-07 (1973).

The Eleventh Circuit has explained that in determining the merits of motions for summary judgment based partly or in whole on claims of ADAAA related discrimination, the court may consider the following factor in determining whether a duty is essential: (1) the employer's judgment as to which functions are essential; (2) the written job description; (3) the amount of time spent on the job performing that function; and (4) the consequences of the employee not doing that function. *Cremeens v. City of Montgomery, Ala.*, 427 Fed. App'x 855, 857 (11th Cir. 2011). The court may give substantial weight to Regions' judgment as to what functions of Plaintiff Miller's job was essential, but that factor alone is not conclusive. *Id.* This is particularly true in the instant case because there is conflict regarding what functions of Plaintiff Miller's job were essential, particularly the monitoring and/or testing component.

When there is conflict in the evidence and the court may not at this stage weigh the evidence, denial of Regions summary judgment is appropriate.

### A. Plaintiff Miller's ADAAA Failure-to-Accommodate Claim Presents Genuine Issues of Material Fact.

Regions' argument that Plaintiff Miller's ADHD "does not automatically" render her disabled under the ADAAA misstates the governing legal standard. Regions relies on an unpublished opinion, *Simpson v. Alabama*

*Dep't of Hum. Res.,* 311 F. App'x 264 (11th Cir. 2009) and the other one, *Sutton v. Lader,* 185 F.3d 1203, 1208–09 (11th Cir. 1999), which pre-dates the Americans with Disabilities Acts as Amended 2008 ("ADAAAA"), which expressly broadened the definition of disability and rejected earlier, restrictive interpretations of "substantially limits." Under the ADAAAA, the term "substantially limits" is to be "construed broadly in favor of expansive coverage," 29 C.F.R. § 1630.2(j)(1)(i), and "is not meant to be a demanding standard." *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268–69 (11th Cir. 2014).

ADHD is a recognized mental impairment that, when it affects concentration, thinking, working, reading, or task management, can meet the ADAAA's definition of disability. *See* 29 C.F.R. § 1630.2(h)(2). The relevant inquiry is not whether Plaintiff Miller performed her job for a period of time, but whether ADHDD impairment substantially limited one or more major life activities when compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). Plaintiff Miller testified that her ADHD caused significant difficulties with concentration, organization, and task completion—limitations that prompted her to seek medical evaluation, treatment, and workplace accommodations. Her use of prescribed medication such as Adderall cannot be used to negate disability status because, under the

ADAAAA, the determination must be made without regard to mitigating measures. 42 U.S.C. § 12102(4)(E)(i); *Mazzeo*, 746 F.3d at 1268–69.

Whether Plaintiff Miller's ADHD resulted in substantial limitations is itself a fact-intensive inquiry reserved for the trier of fact, particularly where, as here, Plaintiff has offered medical evidence and testimony supporting such limitations. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256–57 (11th Cir. 2007) (questions regarding the extent of limitations and need for accommodation are "classic jury issues").

Because the ADAAAA requires a broad construction of the disability definition, and because when viewed in a light most favorable to Plaintiff Miller, she has presented evidence her ADHD substantially limited major life activities when unmitigated, Regions cannot obtain summary judgment on the argument that no question of fact exists regarding whether Plaintiff Miller's ADHD renders her disabled as defined by the ADAAAA.

#### ***1. Whether monitoring and/or testing duties were essential job functions is disputed.***

Whether a duty is "essential" is a fact-intensive inquiry that considers, among other things, the employer's judgment, written job descriptions, the amount of time spent on the function, the consequences of not performing it,

and the work experience of incumbents. *See* 29 C.F.R. § 1630.2(n); *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1257 (11th Cir. 2007).

Plaintiff Miller offers evidence that the monitoring and/or testing tasks Regions emphasizes in its motion consumed only a limited portion of her time. For example, during an average sixty-to-seventy-hour work week, including hours spent working on weekends, Plaintiff Miller only spent roughly four to six hours on monitoring and/or testing. (Doc. 24, ¶44) Further, Plaintiff Miller offers evidence that preforming monitoring and/or testing were not originally part of her job description and were only added after her then manager Chastain give the responsibility to her in small increments in order to boost his department's numbers in the eyes of the ELC. (Doc. 24, ¶21). Monitoring and/or testing projects were frequently shared with among Region's analysts and could be redistributed without undermining business operations. (Doc. 24, ¶22). Regions' description of Miller's monitoring and/or testing work as "essential" does not alone justify summary judgment by the Court. This is especially true when as here, Miller disputes the factual assertion that the monitoring and/or testing was "essential".

***2. A reasonable trier of fact could find that Regions failed to engage in a good-faith interactive process.***

Once Plaintiff requested accommodation, Regions was required to engage in a good-faith, interactive dialogue to identify potential

accommodations. *Mazzeo*, 746 F.3d at 1268–69. Regions' argument that it "engaged in the interactive process" and therefore cannot be liable ignores both the ADA's requirements and the factual disputes in this case. The law is clear: an employer's mere participation in the interactive process does not immunize it from liability when the employer fails to offer an effective, reasonable accommodation or prematurely closes the process. *See EEOC v. St. Joseph's Hosp., Inc*., 842 F.3d 1333, 1345 (11th Cir. 2016) ("The ADA does not mandate a particular interactive process, but it does require the employer to provide a reasonable accommodation when one is needed."). The question, which is to be answered by the trier of fact is whether the employer actually provided a reasonable accommodation—not whether it held discussions. *Id.*

The timeline shows that Regions quickly dismissed Plaintiff Miller's request to adjust monitoring and/or testing duties and then unilaterally closed her accommodation request. Regions' witness admitted that the company treated Plaintiff Miller's request as resolved even though her disability-related limitations persisted. The ADAAA requires an interactive, collaborative, and ongoing assessment—not a one-time refusal followed by closure of the file. See 29 C.F.R. §1630.2(o)(3) (interactive process requires "identify[ing] the precise limitations resulting from the disability and potential reasonable

accommodations"). The Eleventh Circuit has repeatedly held that whether an employer acted in good faith during the interactive process is a question for the trier of fact when the process was cut short, when the employer rejected reasonable options, or when proposed accommodations were ineffective. *Holly,* 492 F.3d at 1262–63.

Regions' "alternative accommodations" were not accommodations at all—they were routine supervisory practices already required of any competent manager. Regions claimed "accommodations" consisted of weekly one-on-one meetings, communication regarding deadlines, referrals to resources, prioritization, and time-management suggestions. But courts have repeatedly held that ordinary supervisory feedback, routine check-ins, and generic performance management are not ADAAA accommodations. *See, e.g., Breen v. Dep't of Transp.*, 282 F.3d 839, 842 (D.C. Cir. 2002) ("The interactive process does not end with generic, non-responsive offers untethered to the employee's disability-related limitations.").

A reasonable trier of fact could conclude that these "accommodations" were neither responsive to Plaintiff Miller's ADHD-related limitations nor effective in enabling her to perform her essential duties.

### *3. Plaintiff did not receive the accommodations Regions claims to have provided.*

Although Regions asserts that it provided alternative accommodations, the very testimony of Plaintiff Miller cited by Regions shows that these supposed accommodations were either never implemented, were offered only in name, or were quickly abandoned. Regions' decision to close her accommodation request is itself evidence that these measures were not intended to address Plaintiff Miller's limitations in any meaningful way. The multiple ways to interpret Regions' actions or lack thereof, presents a question of fact of the trier of facts.

Regions failed to identify or provide any effective accommodation addressing Plaintiff Miller's ADHD-related cognitive limitations. Simply offering generic performance coaching—something all employees may receive—does not satisfy Regions' statutory obligation.

The cases Regions cites—*Beasley, Barneman, D'Onofrio,* and *Adamson*—stand for the uncontroversial principle that an employer may choose among effective reasonable accommodations. But here, the accommodations Regions offered were neither effective nor responsive to Plaintiff Miller's disability. Moreover, these cases were decided only after weighing evidence—not at summary judgment where, as here, significant factual disputes exist.

The Eleventh Circuit has consistently held that disputes over: the adequacy of the interactive process, whether a proposed accommodation is reasonable, whether an employer prematurely ended the process, and whether the employer's alternatives were effective are trier of fact questions. *See Holly*, 492 F.3d at 1262–63; *Mazzeo*, 746 F.3d at 1268–69.

Here, a reasonable trier of fact could easily conclude that Regions: (1) rejected Plaintiff Miller's request without exploring reasonable alternatives, (2) offered only generic "accommodations" unrelated to her disability, (3) closed the process prematurely, an provided nothing that enabled her to perform her job.

For these reasons, summary judgment is inappropriate, and Defendant's argument that it fulfilled its ADAAA obligations fails as a matter of law and fact.

***4. Plaintiff Miller was denied reasonable accommodations by Regions.***

Plaintiff Miller's requested accommodations—such as modest adjustments to task assignments, additional structure or written instructions, or limited flexibility related to her ADHD—are facially reasonable and commonly recognized as reasonable under the ADA. Plaintiff Miller's evidence shows these accommodations would not have imposed an undue

hardship. By refusing to implement any meaningful accommodation and instead escalating discipline, Regions subjected Plaintiff to precisely the harm the statute is designed to prevent.

Because genuine disputes exist as to essential functions, the adequacy of the interactive process, and the denial of reasonable accommodations, summary judgment on Plaintiff Miller's ADAAA failure-to-accommodate claim is improper.

### B. Plaintiff Miller's ADAAA Retaliation Claim Should Be Submitted to a Trier of fact

The ADAAA prohibits retaliation against an employee for opposing unlawful practices or requesting reasonable accommodations. To establish a prima facie case of ADAAA retaliation, Plaintiff Miller must show: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection between the two. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

#### *1. Protected activity and adverse action are not seriously disputed.*

Requesting a reasonable accommodation is protected activity under the ADA. Plaintiff made such requests and promptly thereafter experienced

escalating written discipline, negative documentation, and ultimately termination—clear adverse actions.

### *2. Temporal proximity and pattern of discipline support causation.*

The Eleventh Circuit has long held that close temporal proximity between protected activity and adverse action may establish causation. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Here, Regions intensified its scrutiny and discipline of Plaintiff in short order after her accommodation request. The timing, along with the sudden shift from minimal or informal criticism to formal documentation and termination, permits a reasonable inference of retaliatory motive.

### *3. Regions' shifting explanations raise a trier of fact question on pretext.*

Once Plaintiff establishes a prima facie case, Regions must articulate a legitimate, non-retaliatory reason for its actions. The burden then shifts back to Plaintiff to show pretext. *Combs*, 106 F.3d at 1528. Plaintiff may demonstrate pretext by showing "weaknesses, implausibility, inconsistencies, incoherencies, or contradictions" in the employer's explanation such that a reasonable factfinder could find it unworthy of credence. *Id.*

Plaintiff Miller's evidence shows that Regions' explanations have shifted over time—emphasizing different alleged performance issues at different points, characterizing her performance more harshly as litigation approached, and relying on standards that were not consistently enforced against other employees. Such shifting reasons and selective enforcement are classic indicia of pretext under Eleventh Circuit law.

Viewing the record in the light most favorable to Plaintiff, a reasonable trier of fact could conclude that Regions retaliated against her because she requested ADAAA accommodations. Summary judgment on this claim must be denied.

### C. Plaintiff Miller's FMLA Retaliation Claim Contains Multiple Fact Disputes

The FMLA creates two types of claims: interference claims and retaliation claims. Plaintiff Miller is allowed to assert her claims of retaliation against Regions because she was retaliated against for engaging in conduct protected under the FMLA. To preserve and enforce these rights, "the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act ... [,] and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity

protected by the Act." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (cleaned up).

When as here, there is no direct evidence of retaliation in the FMLA retaliation context, the court employs the same *McDonnell Douglas Corp*. burden shifting framework discussed supra.

To prevail on an FMLA retaliation claim, Plaintiff Miller must show: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected conduct. *Higdon*, 393 F.3d at 1219. Regions admits Plaintiff took FMLA leave and that it disciplined and ultimately terminated her shortly after her return.

There is no dispute that Plaintiff Miller engaged in a protected activity when she applied for and went on FMLA leave. Likewise, there can be no dispute that Plaintiff Miller has suffered an adverse employment action as, termination is the ultimate adverse employment action. The very evidence submitted by Regions establishes that the causal connection between Plaintiff Miller's protected conduct and Regions' adverse action of termination against Plaintiff Miller.

The Eleventh Circuit routinely rejects summary judgment where, as here, an employee is disciplined or terminated shortly after returning from

FMLA leave and the employer offers inconsistent explanations. In *Jones*, 854 F.3d 1261 at 1271–72, the Court reversed summary judgment, holding that temporal proximity measured from the last day of FMLA leave, combined with shifting reasons offered by the employer, was sufficient for a trier of fact to find retaliatory intent. Likewise, in *Jones v. Aaron's Inc*., 748 F. App'x 907, 911–13 (11th Cir. 2018), the Eleventh Circuit vacated summary judgment, finding that inconsistencies, disputed performance allegations, and disciplinary actions occurring on or immediately after the employee's return from leave were classic indicators of pretext.

### D. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's FMLA Retaliation Claim

#### *1. Multiple Regions' actions qualify as adverse actions under the FMLA.*

Plaintiff Miller's termination is not the only adverse action suffered by her after return from FMLA leave. The Eleventh Circuit broadly interprets adverse action in the FMLA retaliation context to include "any action that might dissuade a reasonable worker from exercising FMLA rights." *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018).

Under this standard, a reasonable trier of fact could find that (1) Regions' removal of core job duties from Plaintiff Miller upon her return from leave, (2) assignment of the requirement to complete daily logs, (3) written and verbal warnings issued to Plaintiff Miller, and (4) the escalated scrutiny

and discipline of Plaintiff Miller all amount to retaliation of Plaintiff Miller's protected activity.

The Eleventh Circuit and district courts routinely hold that written reprimands, disciplinary write-ups, assignment changes, and heightened scrutiny may qualify as adverse actions, especially when they contribute to a chain of events culminating in termination. *See Jones*, 748 F. App'x at 912–13 (reversing summary judgment; warnings and scrutiny after FMLA leave created a jury issue); *Schaaf v. SmithKline Beecham Corp.*, 602 F.3d 1236, 1244 (11th Cir. 2010).

Here, the "final written warning"—issued shortly after Plaintiff Miller's return—was not benign. It was what Regions itself labeled the final escalation step before termination. A reasonable trier of fact could conclude this materially altered the terms and conditions of employment and directly contributed to her discharge. Thus, Plaintiff Miller easily satisfies the "adverse employment action" element.

***2. Plaintiff easily establishes causation: Regions ignores Eleventh Circuit precedent and relies on cases that are either distinguishable or superseded.***

Regions argues that some actions occurred before Plaintiff Miller's leave. However, causation is not defeated simply because earlier discipline occurred. The critical question, and one to be answered by the trier of fact is

whether post-leave adverse actions may have been motivated by Plaintiff Miller's protected leave. The Eleventh Circuit has twice reversed summary judgment in materially identical scenarios: *Jones*, 854 F.3d 1261 (employee returned from FMLA leave; employer escalated discipline and terminated him weeks later.). (11th Circuit held that temporal proximity plus disputed performance issues created a trier of fact question.); and *Jones*, 748 F. App'x 907 (warnings and discipline shortly after return from FMLA leave created a genuine issue of fact on causation.).

In the instant case, Plaintiff Miller returned to work in mid-October and immediately after: (1) Regions increased scrutiny; (2) Regions required Plaintiff Miller to complete daily logs; (3) Regions removed Plaintiff Miller's responsibilities; (4) Regions issued a final written warning, and finally (Regions terminated her shortly thereafter.

Regions treats temporal proximity as a rigid stopwatch. But Eleventh Circuit law requires the Court to consider the *entire pattern*, not just the number of days. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). The record here shows exactly that: a steady escalation in discipline beginning immediately after her protected leave.

Regions' "intervening acts" argument creates, rather than defeats, a trier of fact question. Regions claims that CAN-SPAM and the regulatory-

elevation incident break causation. But Plaintiff Miller disputes the accuracy of these allegations; whether they were actually violations; whether they were handled differently when committed by others and; whether Regions seized on trivial mistakes as a pretext to justify a predetermined termination. Disputes regarding the legitimacy of the employer's stated reasons go to pretext—not causation—and must be resolved by a trier of fact. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997) ("P]laintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a trier of fact to find by a preponderance of the evidence that the plaintiff has established pretext.").

Regions' pretext argument depends almost entirely on the court accepting Regions' version of events and discounting Plaintiff Miller's evidence. This is precisely what the court cannot do at the summary judgment stage. A reasonable trier of fact could find pretext based on: (a) Regions' shifting and inconsistent explanations. Regions' rationale morphed over time—before, during, and after litigation. Inconsistent reasons are classic evidence of pretext. See *Gogel v. Kia Motors*, 967 F.3d 1121, 1145 (11th Cir. 2020); (b) disputed performance issues.

Plaintiff Miller disputes the alleged deficiencies. She had prior satisfactory performance reviews and no formal discipline until engaging in protected activity. Factual disputes about performance are for the trier of fact. verse summary judgment in both *Jones* cases.

Employers often argue comparators are necessary; they are not. An FMLA retaliation plaintiff such as Plaintiff Miller can prove pretext by any circumstantial evidence, including timing, inconsistent discipline, questionable investigation, or shifting explanations. *Gogel*, 967 F.3d at 1148.

The fact that Plaintiff Miller had a new manager on her return from leave does not break liability. An employer is liable if any decision-maker was influenced by someone with retaliatory motive. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331–32 (11th Cir. 1999) ("cat's paw" liability). Even more, the Final Written Warning issued by Crump to Plaintiff Miller contains multiple references to Plaintiff Miller's interactions with her former manager McMinn. Plaintiff Miller testified that negative information was funneled upward, creating a trier of fact question.

## IV. CONCLUSION

Regions' motion rests on disputed facts, credibility determinations, and inferences that must be drawn in Plaintiff Miller's favor. Genuine issues of material fact exist as to: (1) whether Plaintiff Miller was a qualified individual

with a disability; (2) whether Regions engaged in a good-faith interactive process and provided reasonable accommodations; (3) whether Regions retaliated against Plaintiff Miller for seeking ADAAA accommodations; and (4) whether Regions retaliated against Plaintiff Miller for exercising her rights under the FMLA.

For all of these reasons, the main reason being that there are clearly disputed questions of fact related to essential jobs functions and retaliatory actions by Regions, Plaintiff Miller respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety and permit a trier of fact to resolve the disputed facts.

Respectfully submitted,

*s/ H. Gregory Harp*

H. Gregory Harp
GREGORY HARP LLC
810 Watterson Curve #26
Trussville, Alabama 35173
T. 205.291.0088
gh@gregoryharplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on Sunday, November 30, 2025, I caused a copy of the foregoing the be served on the following counsel of record:

Carole G. Miller, Esq.
Mary Grace C. Robinson, Esq.
Attorneys for Regions Bank
Maynard Nexsen PC
901 Sixth Ave. North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999

*s/ H. Gregory Harp*