FILED

2025 Dec-15  PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JACKIE L. MILLER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**REGIONS BANK,**<br><br>**Defendant.** | **Case No.2:24-cv-1324-HDM** |

---

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

**Maynard Nexsen PC**
1901 Sixth Ave. North
Birmingham, AL 35203
Telephone: 205.254.1000
Fax: 205.254.1999
Attorneys for Defendant
Regions Bank

*On the Brief:*
　　Carole G. Miller, Esq.
　　Mary Grace C. Robinson, Esq.

## INTRODUCTION

Defendant Regions Bank ("Regions" or "Defendant"), pursuant to the Federal Rules of Civil Procedure 56(a) and the Court's Initial Order (Doc. 4), hereby submits this Reply Brief in support of its Motion for Summary Judgment. Plaintiff Jackie Miller's ("Miller" or "Plaintiff") Response in Opposition ("Opposition") is both untimely and noncompliant with the rules. Even if considered, Plaintiff's Opposition fails to establish a genuine issue of material fact and Regions is entitled to summary judgment as to all of Plaintiff's claims.

## ARGUMENT

**I.    Plaintiff's Opposition Fails to Comply with this Court's Order or the Federal Rules and Should be Stricken.**

Plaintiff's Opposition was due by November 26, 2025. She submitted her filings on November 30, 2025 and December 1, 2025, without seeking leave and without good cause for her late filings.[1] Plaintiff also failed to respond specifically and numerically to each of Defendant's numbered statements of undisputed material facts; nor did she include a record citation for each disputed fact as required by the Order.[2] Instead, Plaintiff offers a three-page narrative of "general questions of fact"

---

[1]  Plaintiff did not provide any explanation or excuse, much less good cause. *See Nat'l Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1093-94 (N.D. Ala. 2018) (attorney oversight does not amount to a "good reason").

[2] "The non-moving party's response to…claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed…must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." Doc. 4 at 17. This is consistent with Fed.

with no record citations nor tied to numbered facts, followed by a response to eight (8) of Defendant's 38 undisputed facts (¶¶ 2, 3, 10, 11, 13, 15, 18, & 22 (misidentified as ¶21-sic)).[3] Even with respect to these eight factual paragraphs, Plaintiff does not cite to competent evidence refuting the facts.[4] Therefore, all of Defendant's facts should be "deemed admitted for summary judgment purposes." Doc. 4, Appx. II p. 17; Fed. R. Civ. P 56(e)(2).

Accordingly, even if Plaintiff's Opposition is not stricken from the record, it fails to controvert any of Defendant's material facts and fails to create a genuine dispute of material fact as required to avoid summary judgment. *See Burch v. City of Florence, Ala.*, 913 F. Supp. 2d 1221, 1231 (N.D. Ala. 2012).

## II.    Plaintiff's ADA Discrimination (Failure to Accommodate) Claim Fails.

### A. *There is no evidence her ADHD substantially limits a major life activity.*

Plaintiff claims that her ADHD impacted her concentration at work and that she "has offered medical evidence and testimony supporting such limitations", but cites to no such evidence. While ADHD can qualify as a disability, it only qualifies

---

R. Civ. P. 56(c)(1). The summary judgment requirements of Appendix II are "mandatory," must be "followed strictly," and "briefs and evidentiary materials that do not conform to the following requirements may be stricken.")

[3] Plaintiff does **not even attempt to dispute thirty of Defendant's enumerated thirty-eight undisputed facts**. As a result, the facts presented in ¶ 1, 4-9, 12, 14, 16-17, 19-21, 23-38 remain undisputed.

[4] Instead, Plaintiff takes issue with irrelevant details such as the exact timing of certain events (¶ 2, 3 & 10) and/or disputes whether her performance was poor, but does not dispute receiving the PIP or related performance counselings (¶ 11, 13, 15, 18, 22 (listed as 21)).

if the condition *substantially* limited Plaintiff's major life activities, a showing Plaintiff did not make and something she contradicted in her own sworn testimony.[5]

### B. *Plaintiff's requested accommodations were not reasonable.*

Plaintiff does not dispute that a request to eliminate an essential function is an unreasonable accommodation request, nor does she dispute that testing and monitoring were part of her regular duties and responsibilities. She simply contends that these job functions were not *essential* because: 1) she only supervised these duties and did not actually perform them in the early part of her career, and long before the relevant period; 2) others also performed and could be reassigned these duties, including when she was on leave. Doc. 23 at 9. Plaintiff also contends that only a small percentage (10%) of her overall time (when you count weekend work) was devoted to testing and monitoring duties (which contradicts her prior testimony).

Plaintiff admits the factors to consider in determining whether a job duty is an essential function of an employee's role include: the employer's judgment, written

---

[5] Doc. 20-1 at 19, 66:17-69:8; *Pepper v. Brown Univ.*, 701 F. Supp. 3d 201, 208 (D.R.I. 2023) ("a diagnosis of ADHD alone cannot by itself establish an ADA claim"); *Pritchard v. Fla. High Sch. Athletic Ass'n, Inc.,* No. 2:19-CV-94-FTM-29MRM, 2020 WL 3542652, at *4 (M.D. Fla. June 30, 2020) ("A mere diagnosis of ADHD, without more may not suffice to establish disabled status under the ADA or the Rehabilitation Act."); *Donkor v. Weill Cornell Med. Coll.*, No. 23-CV-369 (VSB), 2025 WL 639313, at *3 (S.D.N.Y. Feb. 27, 2025) (holding that an ADHD diagnosis, without factual proof of substantial limitations, is insufficient and that organizational difficulties are common and not unique to ADHD); *Hentze v. CSX Transportation, Inc.,* 477 F. Supp. 3d 644, 670 (S.D. Ohio 2020) ( Plaintiff failed to show he was "'limited' with regard to these activities at all [by his mental impairment], let alone…'substantially limited,' as compared to the general population.").

job descriptions, time spent on the function, the consequences of not performing that duty, and the work experience of incumbents. She admits that "substantial weight" should be given to the employer's judgment. Doc. 23 at 20, 22-23. There is no dispute that Regions has continuously expressed, both orally and in writing, that testing and monitoring are essential functions of Plaintiff's job position.[6]

With regard to Plaintiff's allegation that years before the relevant time frame (and before working for the managers at issue), she only supervised these functions, this is irrelevant. There is no genuine dispute that *during the relevant times*, Plaintiff was conducting regular testing and monitoring activities, and that it was these activities that Plaintiff sought to eliminate in her accommodation request.

Plaintiff also contends that she only spent a small percentage of her overall hours performing testing and monitoring duties. First, Plaintiff cannot now contradict sworn testimony via declaration. Doc. 24 ¶53.[7] Regardless, the fact remains that these were essential functions of her job, regardless of how often she performed them or if the activity increased over time.[8] Plaintiff also alleges that

---

[6] Doc. 21 at ¶ 5, 8, 11, 15, 22, pp. 22-23.

[7] Plaintiff testified that her monitoring and testing responsibilities occupied approximately 40% of her time at work since 2019. Doc. 20-1 at 31, 114:11-115:3. She also told her manager that she had 14 monitoring and testing functions as part of her daily activities. Doc. 20-1 at 71. A declaration cannot merely refute the declarant's prior testimony to create the illusion of a factual dispute. *Garth v. TVA Bd. of Directors*, No. CV-08-S-01593-NW, 2012 WL 13089808, at *1 (N.D. Ala. Mar. 21, 2012); *See* Fed.R.Civ. Pro. 56(c)(4).

[8] *Marquez v. Costco Wholesale Corp.,* 550 F. Supp. 3d 1256, 1282 (S.D. Fla. 2021) (holding that an infrequently performed function is still an essential function).

failing to complete these tasks carried no real consequences, but offers only her own (irrelevant) opinion that once again conflicts with her testimony.[9] *Bagwell v. Morgan Cnty. Comm'n,* 676 F. App'x 863, 867 (11th Cir. 2017) (a task was essential despite the employee's contrary belief). Regions clearly deemed the testing and monitoring functions essential parts of Plaintiff's position,[10] and the employer's view of whether functions are essential is afforded substantial weight. *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 760 (11th Cir. 2023). Because Plaintiff's ADA claim is based on Regions' refusal to eliminate essential functions (the testing and monitoring functions) (Doc. 1-1 ¶110)[11], Count I fails as a matter of law.

### C. Regardless, Defendant Engaged in the Interactive Process.

Even if testing and monitoring were not essential functions, there is no liability for not providing her *requested* accommodation. Regions' obligation under the ADA was to engage in the interactive process.[12] Regions' accommodation

---

[9] Plaintiff agreed Regions could potentially face severe consequences if these tasks were not completed. Doc. 20-1 at 32, 120:3-13; Doc. 25-5 at ¶5.

[10] Regions made this clear to Plaintiff when she requested these functions be eliminated. Doc. 20-1 at 75, 290:12-292:18.

[11] Plaintiff's suggestion that her request was simply to make "modest adjustments" to these responsibilities is not consistent with the record evidence; rather, the request that was allegedly denied was "removing all of the testing and monitoring activities." *See* Doc. 20-1 at 85, 332: 10-12; Doc. 1-1, ¶ 110-113; Doc. 20-2 at 82.

[12] In fact, *Regions encouraged her to re-engage* in this process when she returned. She elected not to follow up on further accommodations. Doc. 23 ¶¶ 26, 29. Regardless, Plaintiff has already admitted Regions was trying hard to find a solution for her, it offered her alternative accommodations, and made it clear that they would continue the process should she desire to do so upon her return from leave (which was one of the accommodations extended to her). Doc. 20-1 at 75, 79, 85, 290:22-292:4, 307:4-8, 332:4-333:11; Doc. 20-2 at 77-88.

specialists engaged in the interactive process, offered alternative accommodations, and offered to continue the dialogue when she returned from leave (which was her expressed preference). *See* Doc. 21 at ¶¶ 21, 24, 26, 29. [13]

Plaintiff's ADA failure to accommodate claim (Count I) fails at every level of analysis.[14] The request was unreasonable as a matter of law. Defendant nevertheless engaged in the process and offered alternative accommodations. Plaintiff chose to take FMLA leave and not re-engage, despite the invitation to do so.

### III.   Plaintiff's ADA Retaliation Claim (Count II) is Due to be Dismissed.

Plaintiff states she experienced "escalating written discipline, negative documentation, and <u>ultimately termination</u>" in retaliation for her requesting an accommodation. Doc. 23 at 28-29.[15] However, in her Complaint, Plaintiff only challenged her employment termination as an act of retaliation for her <u>leave in violation of the FMLA</u>. Doc. 1-1 at 17. She *did not claim* she was terminated in

---

[13]The interactive dialogue and alternate accommodations offered by Regions are in writing and not subject to reasonable dispute. Doc. 20-2 at 77-81. Plaintiff's dissatisfaction with the alternatives offered is irrelevant. Plaintiff admitted in her deposition that Regions engaged in a good-faith interactive process. See Doc. 20-1 at 75, 79, 85, 290:22-92:4, 307:4-8.

[14]Plaintiff also failed to show the alleged denied accommodation resulted in an adverse employment action. Doc. 21 at 27-28. Her termination followed specific incidents in which she failed to escalate regulatory concerns and gave inaccurate information to stakeholders. There is no evidence she would not have been terminated if Regions provided her with more tools to organize and help her stay on task.

[15] Because Plaintiff has not demonstrated her ADA was a disability, she cannot pursue any claims under the ADA, including Count I (discrimination) or Count II (retaliation).

retaliation for her ADA request. *See* Doc.1-1 ¶ 116-121. This claim is therefore not before the Court.[16]

Plaintiff failed to present any evidence that the challenged acts (*i.e.*, menial tasks, activity logs, and temporary removal of duties) were sufficient to "deter a reasonable person from seeking an accommodation." Her sworn deposition testimony made it clear these isolated events were, at most, trivial workplace annoyances that did not amount to adverse employment actions.[17] Plaintiff's efforts to recast the challenged events through a contradictory declaration (or to challenge a new event altogether) should not be considered by the Court.

Plaintiff also fails to present evidence of a causal connection between the challenged acts and her request for a medical accommodation. At most, she argues a warning came (months) after her request. The temporal proximity between the events is insufficient to establish a causal link. Doc. 21 at 32-33. Nor has Plaintiff presented any evidence that the reasons articulated by Defendant for the challenged decisions in Count II were pretextual.[18] While she asserts that the reasons for the challenged actions have "shifted," she does not cite any evidence showing Defendant

---

[16] Even if she had preserved a claim that she was fired in retaliation for seeking a medical accommodation in violation of the ADA, this claim would fail, as there is no evidence linking her termination by a later manager to her prior requests for accommodation. Plaintiff's morphing theories about why she was fired further undermine her claim that "but for" her FMLA leave, she would not have been terminated.

[17] Doc. 20-1 at 29, 61, 86-87, 107:4-109:5, 236:20-237:7, 335:16-23-338:1-5.

[18] *See* Doc. 20-5 ¶ 28-29; Doc. 20-6 ¶ 16-23,34-35. Plaintiff does not appear to present any evidence that would controvert the stated reasons for these actions.

provided a different explanation for the actions she is challenging. Similarly, Plaintiff alludes to comparator evidence or inconsistently enforced policies, but provides no details, much less evidence, in support. Regardless, Plaintiff has already testified she was not aware of any similarly situated comparators. Doc. 20-1 at 88-89, 342:2-12, 348:18-349:19.

Plaintiff has certainly not presented sufficient evidence to support a finding that "but for" her request for accommodation, these challenged acts would not have occurred.[19] *Lowe v. Pettway*, 665 F. Supp. 3d 1313, 1334 (N.D. Ala. 2023). Defendant is entitled to summary judgment on Count II.

## IV. Plaintiff's FMLA Retaliation Claim (Count III) Also Fails.

Concerning her FMLA retaliation claim, other than her termination, the acts Plaintiff challenges are insufficient to dissuade a reasonable worker from exercising their FMLA rights. Plaintiff's own description of the events she is challenging, including being asked to complete a log and temporary removal of job duties as she adjusts back to work after leave, are minor inconveniences that would not dissuade or discourage a reasonable person from taking a leave. Doc 23 at 32-33.

Regardless, Plaintiff cannot establish any causal link between the challenged events and her FMLA leave. Plaintiff contends the fact that she was disciplined and

---

[19] To the contrary, according to her sworn testimony, Plaintiff believes the challenged events occurred in retaliation for her turning in a negative survey about her boss months before and were unrelated to any medical request. Doc. 20-1 at 69-74, 268:20-269:20, 286:13-17.

later terminated months after her leave is somehow sufficient to establish a causal connection.[20] The warning following Plaintiff's leave was a natural progression of progressive discipline and counseling based on her continuous deficiencies before she took a leave of absence. Any causal link the Plaintiff attempts to establish is broken by her intervening actions, including deficiencies uncovered during her leave and the final CAN_SPAM and FACTA incidents.[21]

Plaintiff offers no evidence that the stated reasons for the challenged acts were a pretext for FMLA retaliation. Plaintiff baselessly claims Defendant's stated reasons have "shifted" or been inconsistent. Plaintiff's tortured argument appears to be that because her performance took on different forms and was shown in varying ways, it is a pretext to summarize the reasons for discharge generally as "poor performance."[22] Plaintiff's argument is illogical, and it does not create an issue of fact as to whether Plaintiff was terminated in retaliation for taking a leave. Plaintiff does not begin to satisfy her showing that "but for" her protected activity (her FMLA leave), she would not have been terminated or subject to the other challenged adverse

---

[20] Even if a time frame of several months is sufficient to create this inference of a causal connection (which it is not), temporal proximity alone is not enough as a matter of law. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

[21] Plaintiff argues that her conduct in the "CAN-SPAM and regulatory-elevation incident" was (in her view) a trivial mistake and not a violation. She provides no support for her view, nor does she explain why there was a massive communication issued to address her "trivial mistake."

[22] Additionally, Plaintiff misrepresents that the Eleventh Circuit "has twice reversed summary judgment in materially identical scenarios." Doc. 23 at 34. In *Schaaf*, the Court found *in favor of summary judgment* because substantial performance problems were uncovered while the employee was on leave. *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1244 (11th Cir. 2010).

actions.[23] Plaintiff's retaliation claims, like her ADA discrimination claim, fail as a matter of law. *Dobbs v. Lakeland Cmty. Hosp.*, LLC, No. 7:14-CV-01363-LSC, 2015 WL 5568378, at *9 (N.D. Ala. Sept. 21, 2015).

## **CONCLUSION**

For all of the reasons outlined above, Defendant is entitled to judgment as a matter of law. Plaintiff has failed to establish that there is a genuine dispute as to any material fact, and Regions respectfully submits that this Court dismiss Plaintiff's claims with prejudice pursuant to Rule 56.

*/s/ Carole G. Miller*
Carole G. Miller
Mary Grace C. Robinson
MAYNARD NEXSEN PC
1901 6th Avenue N. Suite 1700
Birmingham, AL 35203
t. (205) 254-1000
carole.miller@maynardnexsen.com
mrobinson@maynardnexsen.com
*Attorneys for Defendant Regions Bank*

---

[23]McMinn was not involved in Plaintiff's termination or any events that took place after her leave. Plaintiff's last-ditch effort to cast McMinn as controlling Ms. Crump (her cat's paw allegation) is unsupported by any evidence. To establish cat's paw liability, Plaintiff would have to show 1) McMinn was motivated by a desire to retaliate against the employee who took a leave (of which there is no evidence); 2) the conduct for which Plaintiff was terminated did not occur (which is false as it is clear that the events that lead to her termination occurred); and 3) that McMinn infected and took over the termination decision-making. *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1331 (11th Cir. 1999). Plaintiff offers no proof that McMinn influenced Crump to terminate her based on her request or leave. Crump was analyzing the employee misconduct after she independently investigated the incidents. Plaintiff cannot make any of these showings.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2025, a true and correct copy of the foregoing has been served on the attorneys listed below by electronic filing through the CM/ECF system, which will send notice to the parties to this litigation as follows:

H. Gregory Harp
810 Watterson Curve #26
Trussville, Alabama 35173
gh@gregoryharplaw.com
*Attorney for Plaintiff Jackie Miller*

*/s/ Carole G. Miller*
OF COUNSEL