FILED

2026 May-04  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JACKIE L. MILLER,

     **Plaintiff**,

v.

REGIONS BANK,

     **Defendant**.

Case No. **2:24-cv-1324-HDM**

### SECOND SHOW CAUSE ORDER

On April 10, 2026, upon the court's suspicion that Attorney H. Gregory Harp used AI to generate several false quotations and parentheticals, Attorney Harp was ordered to show cause why he should not be sanctioned. (Doc. 29). In that order, the court also set a show cause hearing on the issue. *Id.* In his response to the court's order, Attorney Harp stated that he does not know how the false quotations ended up in his submitted brief, but that he did not use AI to generate them. (Doc. 30).

At the subsequent hearing, which took place on April 20, 2026, Attorney Harp stated that while he used "ChatGPT to do a general search," neither ChatGPT nor any other AI "wrote a single word" of his brief. Transcript of Hearing at 5–6. When pressed on whether the false quotations were originally generated by ChatGPT, Attorney Harp stated, "Not to my knowledge." *Id.* at 7. Attorney Harp admitted,

however, that he did not go back and check his ChatGPT search history. *Id.* at 10. Upon further questioning by the court, he stated that he "can pull [it] up for the court."

Accordingly, on April 20, right after the hearing concluded, the court ordered Attorney Harp to submit to the court for in camera inspection "[s]creenshots of Attorney Harp's ChatGPT history showing the entirety of all conversations related to this case." (Doc. 31). On April 29, Attorney Harp submitted a flash drive in response to the court's order. That flash drive contained, among other things not relevant here, a one-page, unsigned PDF entitled "Your Honor" which states, in its entirety:

> I have attempted to comply with the Court's Order requiring me to furnish ChatGPT screenshots and native files; however, **my account has been deleted**, and the files are no longer available. I have attempted, in good faith, to recover the account, but I was unable to do so. From my review, it appears that it is not able to be recovered.

On suspicion that Attorney Harp intentionally deleted his ChatGPT account in order to conceal evidence of AI usage from the court, the court, on April 29, ordered Attorney Harp to submit a sworn declaration explaining "the specific steps he undertook to comply with the court's April 20, 2026, Order" and "in granular detail exactly how, when, why, and by whom his ChatGPT account was deleted." (Doc. 33 at 3). The court also ordered Attorney Harp to "[s]ubmit screenshots of every email, text message, or other communication Attorney Harp has received, on

2

any email address, from or relating to OpenAI or ChatGPT." *Id.* Specifically, the court made clear that it wanted screenshots of emails confirming Attorney Harp's ChatGPT account creation and deletion. *Id.* at 3–4. At a minimum, once the court ordered Attorney Harp to produce his ChatGPT history, he had a clear and specific duty to preserve that evidence. *See In re Skanska USA Civ. Se. Inc.*, 340 F.R.D. 180, 185 (N.D. Fla. 2021) ("The obligation to preserve evidence arises when a party has notice the evidence is relevant to litigation or when a party should have known the evidence may be relevant to future litigation.").

Attorney Harp submitted his response on May 1. In it, he states that he deleted his ChatGPT account, though he does not know the exact date and time of such action. (Doc. 34 at 2). However, he states that "**[a]fter the hearing** I was extremely upset that I had used ChatGPT at all. I went to ChatGPT.com and initiated actions to completely deactivate the account." *Id.* (emphasis added).

Attorney Harp's submitted email screenshots show that he signed up for a paid ChatGPT Plus subscription on November 25, 2025. This is contrary to Attorney Harp's statement at the April 20 show cause hearing that he used the free version of ChatGPT. Indeed, because Attorney Harp's brief was submitted on November 30, 2025—only five days after he purchased ChatGPT Plus—the implication is that he purchased ChatGPT Plus specifically to use it on this case. Attorney Harp's emails also show that his ChatGPT account was deleted on April 23, 2026. An email from

OpenAI on April 23 at 6:21 AM states, "Your ChatGPT Plus subscription will not renew and will be canceled, but is still available until the end of your billing period on April 30, 2026. If you change your mind, you can renew your subscription." An email attachment—that appears to be from a separate email from OpenAI on April 23 at 6:25 AM—states that Attorney Harp "requested" a prorated refund for the remaining part of the billing period, which OpenAI initiated in the amount of five dollars and twenty-seven cents.

This indicates that Attorney Harp canceled his ChatGPT account on April 23, **two days** *after* he was ordered to turn information from that account over to the court. Even so, he would have maintained access to his account until April 30—one day beyond the court's April 29 deadline for turning over his ChatGPT history—but he requested and received a prorated refund for the remaining portion of the billing period rather than maintaining access through April 30. This sequence of events demonstrates that Attorney Harp, after being ordered to produce his ChatGPT history, affirmatively took multiple steps to delete his account before the production deadline. This conduct supports a strong inference that Attorney Harp acted in bad faith to prevent the court from obtaining evidence directly bearing on the issues raised in the show cause proceedings, evidence that the court had specifically and unequivocally ordered Attorney Harp to produce. This also casts significant doubt— to put it mildly—on Attorney Harp's April 29 written statement that he "attempted,

4

in good faith, to recover the account" that he had, we now know, taken pains to delete just a few days before.

Accordingly, Attorney Harp is **ORDERED** to show good cause, if there be any, on or before **May 11, 2026**, at **3:00 PM CST**, why he should not be held in civil contempt for willfully disobeying the court's April 20, 2026, Order; sanctioned under the court's inherent authority for bad faith obstruction of the judicial process and spoliation of evidence—including, but not limited to, the imposition of an adverse inference of AI usage; or otherwise sanctioned under the court's inherent authority for violations of Alabama Rule of Professional Conduct 3.4(a) (destruction of material having potential evidentiary value), 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal), and 8.4 (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct that is prejudicial to the administration of justice).

**DONE** and **ORDERED** on May 4, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE